# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| HARD SURFACE SOLUTIONS, INC., an Illinois corporation, | ) ) ) | |
| Plaintiff, | ) ) | No. 09 C 7217 |
| v. | ) ) | Judge Nordberg |
| THE SHERWIN-WILLIAMS COMPANY, | ) ) | Magistrate Judge Cole |
| Defendant. | ) ) | |

## INTRODUCTION

The Sherwin-Williams Company has moved to strike what it characterizes as the plaintiff's untimely disclosure of its proposed experts, which, it also asserts, is hopelessly noncompliant with the requirements of Federal Rule of Civil Procedure 26(a)(2). It also seeks to preclude the plaintiff from calling any expert at trial based upon the plaintiff's failure to have complied with the October 30th date by which plaintiff was to have disclosed its expert. While conceding the lateness of its expert disclosures and its at least partial noncompliance with Rule 26(a)(2), the plaintiff opposes the motion on the ground that the disclosures comply with Rule 26(a)(2)'s mandatory provisions. On November 12, 2010, eight days after Sherwin-Williams filed its Motion to Strike, the plaintiff moved to extend the discovery schedule and "disclosure deadlines." In order for it to "designate trial expert witnesses...." Discovery is scheduled to close on December 31st. Judge Nordberg has sent the motions here for disposition. *See* 28 U.S.C. §636(b)(1)(A).

The facts are these: On February 3, 2010, I entered the current case scheduling order, the terms of which the parties had previously agreed upon and jointly submitted to me for approval. (Doc.##16-17). The order required plaintiff to provide a Rule 26(a)(2) designation of expert

witnesses along with copies of expert reports by July 30, 2010. The order also provided that it could not be modified without leave of court. Plaintiff did not make any disclosures of experts or provide any reports by July 30. Nor did it apply to the court for an extension of the scheduling order. Indeed, it did not even ask counsel for the defendant if they would informally agree to extend the schedule. Instead, it did nothing, and July 30th came and went. So, too, did August and September and almost all of October without any disclosures or explanations from the Plaintiff and without any request for an extension of the expert disclosure date.

Finally, on October 26, counsel for plaintiff sent a laconic, two-sentence email to the Defendant that attached what purported to be plaintiff's Rule 26(a)(2) disclosures. *See* Ex. A, Defendant's Motion to Strike Disclosures. (Docket #25). Ignored was the passage of almost three months from the date on which the disclosures were due. In the interim, no motion was made for leave to file the undeniably tardy "disclosures" or to extend the due date for them. Each of the purported disclosures antedated by at least four months the date on which the complaint in this case was initially filed in the Circuit Court of Cook County.[1]

The purported disclosures consisted of four documents. The first was a five-page, single-spaced letter from Wiss, Janney, Elstner Associates, Inc. to the plaintiff's president. The letter, in the first sentence, stated that it was "an initial assessment" of the failure of a deck coating system at the Woodfield Corporate Center. It was based upon a review of "selected documents and correspondence" provided by the plaintiff. The letter went on to describe the subject project, the scope of construction, various understandings that it had, the conditions of failure, an assessment conducted by a separate firm, Dessman Associates, an engineering consultant retained by Lincoln

---

[1] Sherwin-Williams removed the case to this court on November 17, 2009.

Property Corporation which was the manager of the Woodfield Corporate Center. The letter concludes by recommending a particular evaluation "to confirm the causes of failure before a final decision is made regarding the extent of remedial measures to be undertaken and the products to be installed."

The second supposed expert disclosure was a thirteen-page, single-spaced June 1st letter to Lincoln Properly Company from Dessman Associates. It quite explicitly states its limited and "intended" purpose, namely "to summarize our findings on the current conditions of the plaza and present recommendations on the repairs required to the plaza." The letter concludes with repair recommendations and the equivocal statement that "it appears that the waterproofing layer and the wear course may not have the proper elasticity to accommodate the exposures conditions of the plaza. It goes on to discuss other "areas of concern" and makes reference to its field survey and material testing. The third supposed disclosure is a one-and-a-half-page letter dated May 22nd letter from Dessman Associates to Lincoln Property Company and states that it is in response to a May 8th letter from Sherwin-Williams. The letter does not begin to comply with the requirements of Rule 26. The final supposed disclosure is a thirteen-page, single-spaced letter dated April 29, 2009 from Dessman Associates to Lincoln Property Company. While the letter appears to be identical to the June 1st letter, it is stamped "**DRAFT**" on every page.

Sherwin-Williams' initial motion to strike relied solely on the lateness of the disclosures and the failure to comply with the mandatory requirements of Rule 26(a)(2)(B)(i)-(vi). Thereafter, it filed a supplemental brief in support of its motion, which repeated the arguments in the original motion but substantially expanded on them and raised arguments not raised in the initial motion. I struck that filing *sua sponte* since it was entered without leave of court.

**ANALYSIS**

The plaintiff's disclosures were 3 months late – and, as discussed below, were noncompliant in every particular with Rule 26(a)(2)(B). The plaintiff's Motion to Extend Discovery Schedule and Disclosure Deadlines obliquely suggested that the lateness of its submission resulted from an accident suffered by the plaintiff's president. But that accident occurred on August 28, 2010, over a month *after* the disclosures were due. And, the four letters comprising the disclosures had been in existence since May and June of 2009, more than a year *before* the claimed accident and long before the case was even filed. This chronology also demonstrates the unconvincing nature of the plaintiff's argument that the Rule 26 disclosures were late because the defendant had not answered discovery from the plaintiff until October 19, 2010 – six months after it had been propounded.

Significantly, although the certificate of service accompanying the discovery requests to Sherwin-Williams is attached as an exhibit to the Motion to Extend the Discovery Schedule and Disclosure Deadlines, the requests, themselves, are not; nor is their content discussed. Thus, it is impossible to assess the validity of the assertion that the failure to answer the particular requests precluded a timely designation of experts and disclosure of their reports. At bottom, all there is is the unsubstantiated conclusion of counsel that the lateness of Sherwin-Williams' response to interrogatories precluded timely disclosure of plaintiff's expert reports. But uncorroborated statements in briefs do not count, and arguments based on unsupported conclusions are not to be considered. *See e.g., Fabriko Acquisition Corporation v. Prokos,* 536 F.3d 605, 609 (7th Cir.2008); *de la Rama v. Illinois Dept. of Human Services,* 541 F.3d 681, 688 (7th Cir.2008)*; United States v. Alden,* 527 F.3d 653, 664 (7th Cir.2008); *White Eagle Co-opinion Ass'n v. Conner,* 553 F.3d 467,

4

476 n. 6 (7th Cir.2009); *United States v. Berkowitz,* 927 F.2d 1376, 1384 (7th Cir.1991).

The attempt to attribute the lateness of the disclosures to Sherwin-Williams also ignores the fact that in the face of this claimed discovery noncompliance by Sherwin-Williams over a six-month period, the defendant did nothing. Were the situation what it is now claimed to have been, it is inconceivable that the plaintiff would have taken no action to secure an extension of the discovery schedule and/or compliance with the outstanding discovery now claimed to have been essential to the plaintiff's Rule 26(a) disclosures. Finally, and perhaps most importantly, the fact that the four letters that comprise the expert reports had been in existence since the spring and summer of 2009, but were not produced until the end of October 2010, demonstrates rather conclusively that the lateness of the disclosures was not causally linked to any act or omission by Sherwin-Williams.

The instant case demonstrates an unacceptable disregard of the deadlines set by the discovery schedule. The conduct of the plaintiff was little more than an impermissible arrogation by the plaintiff of the right to decide for itself when and what would be produced under Rule 26. But the Federal Rules of Civil Procedure do not permit what was, in effect, a re-writing by the plaintiff of the discovery schedule. Time and again the Seventh Circuit has emphasized that "[i]gnoring deadlines is the surest way to lose a case. Time limits coordinate and expedite a complex process; they pervade the legal system, starting with the statute of limitations. Extended disregard of time limits (even the non-jurisdictional kind) is ruinous. 'Lawyers and litigants who decide that they will play by rules of their own invention will find that the game cannot be won.' " *United States v. Golden Elevator, Inc.,* 27 F.3d 301, 302 (7th Cir.1994)(parenthesis in original). In some contexts, a district court has the discretion to conclude that even a day's delay ought not be excused. *Reales v. Consolidated Rail Corp.,* 84 F.3d 993, 996 (7th Cir.1996). *Raymond v. Ameritech Corp.,* 442 F.3d

5

600, 606 (7th Cir.2006)("'We live in a world of deadlines.... The practice of law is no exception. A good judge has a right to assume that deadlines will be honored.'"); *Harris v. Owens-Corning Fiberglass Corp.,* 102 F.3d 1429, 1433 (7th Cir.1996).

Adherence to deadlines for disclosure of expert witnesses and their reports under Rule 26(a)(2) is not an exception to these principles. Recognizing that courts must have the authority to enforce discovery deadlines, numerous cases have approved exclusion orders by district courts where expert reports were not provided in a timely way. *See, e.g., Scaggs v. Consolidated Rail Corp.,* 6 F.3d 1290, 1295-96 (7th Cir.1993); *Smith v. Union Pacific R. Co.,* 168 F.R.D. 626, 629 (N.D.Ill.1996); *Finwell v. City of Chicago,* 239 F.R.D. 494 (N.D.Ill. 2006), *objections overruled, Finwall v. City of Chicago*, 239 F.R.D. 504 (N.D.Ill. 2006)(Manning, J.)(sustaining order excluding plaintiff's experts as a sanction for late and noncompliance with Rule 26).

In *Salgado by Salgado v. General Motors Corp.,* 150 F.3d 735 (7th Cir.1998), Salgado had "failed to comply with the court's deadline for the submission of the reports of expert witnesses," despite having sought and received extensions of the discovery deadline. *Id.* at 737. Even then, the report was conclusory and noncompliant with Rule 26. The district court rejected counsel's explanation that he thought no more was required, and that he considered the report to be "preliminary." The district court concluded that Salgado's "noncompliance with Rule 26(a)" barred the report, and he denied plaintiff leave to file a supplemental report, especially since all the information needed was readily available prior to the court-ordered discovery deadlines. *Id.* at 737-38. On appeal, the Seventh Circuit affirmed the district court's discretionary decision to bar the report as a discovery sanction. There is nothing novel about *Salgado's* holding. It is simply an application of the federal courts' consistent recognition of the importance of adherence to discovery deadlines

and of the broad authority district courts have to deal with deviations from those deadlines. *See supra* at 5-6. Indeed, so broad is that discretion that it can encompass the imposition of a sanction for noncompliance with expert report deadlines, even though it may result in "a young person, injured in infancy... [being] denied a merits decision...."

Of equal, if not greater, concern is the expert disclosures' striking noncompliance with Rule 26's mandatory requirements that the written expert report contain a complete statement of all opinions the witness will express, the data or other information considered by the witness in forming them, any exhibits that will be used to summarize or support them, the witness's qualifications, including a list of all publications authored in the previous 10 years, a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition, and a statement of the compensation to be paid for the study and testimony in the case. The plaintiff's disclosure failed to comply with a single one of these requirements. As noted, all the plaintiff did was to submit four letters – one of which was marked as a Draft – to Sherwin-Williams, all of which were prepared long before the Complaint in this case was even filed. Nothing was submitted by the plaintiff from the authors of the letters asserting that even though written when there was no lawsuit pending, the letters accurately stated their opinions about which they would testify on direct examination at the trial. In short, it simply cannot be said that the letters either were intended to or did set forth the testimony the expert expected to give at trial on direct examination. Quite the contrary. As the letters make luminously clear, their purpose was quite different.

Expert reports are to be a detailed and complete statement of the testimony of the expert on direct examination. *Salgado*, 150 F.3d at 741 n.6; *Cohlmia v. Ardent Health Services, LLC*, 2008 WL 3992148, 2 (N.D.Okla. 2008). Preliminary or tentative opinions – and that surely is what the

"draft" letter and the other letters are – are not acceptable *Salgado,* 150 F.3d at 742 n.6; *Kern River Gas Transmissions Co. v. 6.17 Acres of Land*, 156 Fed.Appx. 96, 102 (10th Cir. 2005). The four letters submitted to Sherwin-Williams required that Sherwin-Williams comb through their contents to ascertain what the opinion of the author was and to guess which of the numerous observations would comprise the authors' direct examination at trial. At best, the letters tended to turn expert discovery "into a game of evasion," contrary to the core purpose of Rule 26. *Tenbarge v. Ames Taping Tool Systems, Inc.*, 190 F.3d 862, 865 (8th Cir. 1999).

The failure to submit the information about the experts' backgrounds and compensation was not an oversight. Indeed, the email to Sherwin-Williams attaching the four pre-Complaint letters recognized the deficiencies in the disclosures, but contented itself with the statement that the *required* information "will be made via supplemental disclosure." (Exhibit A, to Motion to Strike at. 2)(Emphasis supplied). Quite apart from the fact that Rule 26 does not envision – indeed it textually disallows – the kind of "supplement[ation]" insisted on by the plaintiff, the email did not even hint when the information would be provided. To this day, it has not been given to Sherwin-Williams, and no plausible justification for this insouciant attitude towards the requirements of Rule 26 has been advanced. This is but one of a number of incidents comprising a disturbing pattern of noncompliance with discovery schedules and obligations. *Cf. Milam v. Dominick's Finer Foods, Inc.*, 567 F.3d 830, 831 (7th Cir. 2009).

On December 10th – virtually on the eve of the close of discovery – the plaintiff provided answers to interrogatories that had been served in September 2010. In its response, the plaintiff provided the names of 16 individuals whom it claimed had knowledge – in some cases apparently intimate and extensive – of the plaintiff's allegations against Sherwin-Williams. Five of the named

individuals were employees of the plaintiff, who had had day-to-day contact with the construction project in this case. Five more were affiliated with Lincoln Properties; another was from Dessman & Associates, while two were from the architectural firm that approved the Sherwin-Williams product involved in this case. The last two were from the coatings manufacturer. None of these individuals had been listed in the initial Rule 26(a)(1)(A)(i) disclosures, even though their identities and the information they possessed were surely known to the plaintiff at the time the suit was filed. Nor was there a statement of their anticipated testimony.

It may also be noted that, according to Sherwin-Williams, the plaintiff has yet to provide a computation of, or any information or documents, which itemize each category of damages allegedly incurred by it, even though required by Rule 26(a)(1)(A)(iii). Nor, according to Sherwin-Williams, has plaintiff provided any information or documents which refute Sherwin-Williams' counterclaim for the monies owed to it by plaintiff or merchandise and wares received by plaintiff but for which payment has not been made along with costs and attorneys' fees incurred in seeking the recovery of this money.

Under Rule 37(c)(1), "[a] party that without substantial justification fails to disclose information required by Rule 26(a) ... is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed." Thus, where a party does not timely file expert reports, the district court may exclude the party's expert from testifying at trial on the matters the party was required to disclose. *NutraSweet Co. v. X-L Engineering Co.,* 227 F.3d 776, 785 (7th Cir.2000). The sanction of exclusion is automatic and mandatory unless the sanctioned party can show that its violation of Rule 26(a) was either justified or harmless. *Keach v. U.S. Trust Co.,* 419 F.3d 626, 639 (7th Cir. 2005); *Salgado,* 150 F.3d at 742.

9

Expert reports must be submitted at least 90 days before trial or at the time and in the sequence directed by the court. Rule 26(a)(2)(C). *Finwall,* 239 F.R.D. at 498. The plaintiff's noncompliance with Rule 26 is totally unjustified.

Under the Federal Rules of Civil Procedure, it is the court's prerogative-indeed, its duty-to manage its caseload and to set and enforce discovery and other significant deadlines. *Reales.* 84 F.3d at 996. A party does not have the option of complying with those deadlines or ignoring them and then demanding that the court and the opposing party restructure the discovery schedule to accommodate the violation. That is what would be required if Sherwin-Williams' motion were denied or the plaintiff's motion granted. Relying on the plaintiff's failure to timely designate any expert, Sherwin-Williams chose not to hire an independent expert and instead to rely on its own employees. If the plaintiff were allowed to file proper expert disclosures at this late date, the plaintiff would be entitled to retain independent experts – as it represented it would have done had there been a timely designation by the plaintiff – and that would start a new and extended bout of expert discovery. The substantial time entailed by that extension would be further extensively dilated by the discovery of the 16 new individuals belatedly identified in the plaintiff's December 10th answers to interrogatories. Each of these individuals should have been disclosed in the initial Rule 26(a)(1) disclosures. Discovery related to these newly identified people could not be completed before the December 30th discovery close date.

It is no answer to say the trial date has not been set. Late disclosure is not harmless within the meaning of Rule 37 simply because there is time to reopen or to extend discovery. If that were the determining factor, no court could preclude expert or other testimony that was unseasonably disclosed contrary to the discovery deadline dates set by the Court. *See Finwall,* 239 F.R.D. at 495*;*

*Rick,* 1994 WL 484633, *3 (rejecting reopening discovery as a curative); *Aon Risk Services, Inc. of Illinois v. Shetzer,* No. 01-7813, 2002 WL 1989466, *6 (N.D.Ill. Aug. 27, 2002) (rejecting argument that late disclosure was harmless because there was time to conduct deposition before trial; all discovery was required to be completed before the extended discovery); *Gregory v. Oliver,* No. 00-5984, 2002 WL 31972165, *1 (N.D.Ill. 2002)(opportunity to depose expert does not make up for inadequate expert report).

Given the circumstances of this case, and the very substantial discretion district courts have in managing discovery and in selecting sanctions in the event of discovery noncompliance, *Talbert v. City of Chicago*, 236 F.R.D. 415, 419 (N.D.Ill. 2006)(collecting cases); *SEC v. Nacchio*, 2008 WL 4587240, 2-3 (D.Colo. 2008), Sherwin-Williams' Motion to Strike Plaintiff's recently attempted disclosures under Rule 26(a)(2) and preclude it from offering any expert testimony at trial based upon its failure comply with both the Orders of this Court and Federal Rule of Civil Procedure 26(a)(2) [#25] is granted. The Plaintiff's Motion to Extend the Discovery Schedule and Disclosure Deadlines, [#27] is denied.

ENTERED:_____
UNITED STATES MAGISTRATE JUDGE

DATE: 12/13/10